IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GMAC MORTGAGE CORPORATION, and GMAC BANK, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN FINANCIAL NETWORK, INC., and AUSTIN KAZINETZ, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No._____. <br> ) <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) |

## COMPLAINT

Plaintiffs, GMAC Mortgage Corporation and GMAC Bank, by their attorneys, for their complaint against Defendants American Financial Network, Inc. ("AFN") and Austin Kazinetz ("Kazinetz") allege as follows:

### PARTIES

1. Plaintiff GMAC Mortgage Corporation ("GMAC Mortgage") is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 100 Witmer Road, Horsham, Pennsylvania.

2. Plaintiff GMAC Bank is a federal savings bank, organized and existing under the laws of the United States with its principal place of business at 3710 Kennett Pike, Greenville, Delaware. In or about January 2002, GMAC Mortgage transferred its wholesale lending business to GMAC Bank, including its rights, title and interest in, to and under the agreements between GMAC Mortgage and AFN that are the basis of this action.

3. Defendant AFN is a Florida corporation with its principal place of business at 2424 N. Federal Hwy., Ste. 400, Boca Raton, Florida, 33431.

4. Defendant Kazinetz is a citizen of Florida who, at all times relevant herein, was the President of Defendant AFN. On information and belief, Kazinetz owns or controls a controlling interest in AFN and, through various means, personally benefited from the wrongful conduct alleged herein.

## JURISDICTION and VENUE

5. Jurisdiction is conferred to this Court by 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6. Venue lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) and the agreements between Plaintiffs and Defendants, in which Defendants expressly consented to venue and jurisdiction in any State or Federal Court in the Commonwealth of Pennsylvania.

## FACTS

7. Plaintiff GMAC Mortgage originates, purchases, services and sells mortgage loans, including loans originated by other mortgage companies and with the assistance of mortgage brokers. In carrying out its business, Plaintiff GMAC Mortgage requires that all loans it purchases from originators such as Defendant AFN be reasonably saleable on the secondary mortgage market for loans (i.e., saleable without a discount due to credit or loan quality). To be reasonably saleable, the loans must meet certain origination, underwriting, and credit quality guidelines. Generally, those guidelines are those used by Federal National Mortgage Association ("FNMA"), Federal Home Loan Mortgage Corporation ("FHLMC") and the Federal Housing Administration ("FHA"), government-sponsored enterprises or agencies that purchase loans on

the secondary market or guarantee their performance. Plaintiff GMAC Mortgage also has its own underwriting guidelines. Plaintiffs' criteria and the criteria of FNMA, FHLMC and FHA (collectively referred to as the "Quality Criteria") ensure that the loans Plaintiffs purchase are supported by satisfactory credit factors and sufficient collateral, and are valuable.

8. Plaintiffs have entered into agreements with the FHA's Department of Housing and Urban Development's FHA Program, by which FHA agreed to insure loans that comport with the FHA guidelines.

9. On or about July 9, 1999, Plaintiffs entered into a Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans with Defendant AFN. On or about October 11, 2000, Plaintiffs entered into a subsequent Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans with Defendant AFN (collectively referred to hereafter as "the Agreements"). The Agreements provide for the purchase and sale of first and second lien residential mortgage loans, including FHA-insured loans. The Agreements included certain matters relating to the origination, processing, and closing of such loans.

10. Under the terms of the Agreements, Plaintiffs agreed that they would, from time to time, purchase from Defendant AFN one-to-four family residential mortgage loans made to individual borrowers, if those loans met certain defined criteria. Under the Agreements, Defendant AFN agreed to be bound to sell loans consistent with the requirements, representations and limitations contained in the Quality Criteria, in the Agreements, in Plaintiffs' Correspondent Lending Manual, under applicable loan delivery programs, and by mortgage loan industry standards ("Sale Criteria").

3

900200.00001/21338761v1

11. Between July 1999 and February 2002, Defendant AFN originated and sold approximately 1,400 loans to GMAC Mortgage; many of these loans were FHA-insured loans. Kazinetz underwrote or approved the making of a number of loans.

12. The final AFN loan was purchased by Plaintiffs in February 2002.

13. Defendants agreed that all loans sold to Plaintiffs would meet or exceed the Quality Criteria and the Sale Criteria. Defendants knew or should have known of the content and importance of the Quality Criteria and the Sale Criteria, and of Plaintiffs' requirement that all loans sold to them would meet or exceed the Quality Criteria and the Sale Criteria. Defendants knew or should have known that any loan sold by them to Plaintiffs that did not meet the Quality Criteria and/or the Sale Criteria would not be reasonably saleable on the secondary market and/or would be a potential source of liability or default to Plaintiffs.

14. Defendants agreed that all loans sold to Plaintiffs would not contain misrepresentation or omissions, would not be supported by false or fraudulent documentation or underwriting, would not be based on inflated appraisals or downpayments, would not be subject to unwritten side agreements that were not revealed to Plaintiffs, and would not be part of any "land flip" or other inappropriate property financing schemes.

15. Unbeknownst to Plaintiffs at the time it purchased the loans from Defendants, and in reliance on the representations and warranties of Defendants, a significant number of the mortgage loans originated from AFN did not comply with the Quality Criteria and/or the Sale Criteria and/or contained misrepresentations or omissions, were supported by false or fraudulent documentation and underwriting, were based on inflated appraisals or downpayments, were subject to unwritten side agreements that were not revealed to Plaintiffs, or were part of "land flips" or other inappropriate property financing schemes (hereinafter "Defective Loans"). The

sale of these loans to Plaintiffs constituted a breach of the Agreements, including the terms of the Correspondent Lending Manual, under the following provisions, among others:

(a) the Defective Loans did not "meet then current underwriting standards and loan policies of GMAC Mortgage, including the Correspondent Manual" (Agreements, ¶ 3(a));

(b) Defendants did not submit bona fide credit, appraisal and other documents, as required (Agreements, ¶ 3(d));

(c) the Defective Loans breached the representations and warranties contained in the Correspondent Manual, including, *inter alia*, that all documents were "complete, accurate, true, correct, and genuine;" that the promissory notes and mortgages "are valid and enforceable in accordance with their terms;" that the loans "conform to Program Guidelines;" and that the loans are eligible for and subject to valid FHA and/or private mortgage insurance, where required (Agreements, ¶ 6; see Correspondent Manual); and

(d) Defendants made representations or warranties in connection with the Defective Loans that contained an untrue statement, or omitted to state a material fact (Agreements, ¶ 9). These representations, and corresponding omissions by Defendants to reveal the true status of the Defective Loans the Troubled Loans, were material.

16. In addition, a number of the loans sold by Defendants to Plaintiffs (including but not limited to Defective Loans) have gone into default, or have been the subject of repurchase requests or demands from investors, or have been referred out for foreclosure, or have been subject of litigation, or have been denied for insurance coverage by FHA or private mortgage insurers (or such coverage has not been provided as promised, or been withdrawn) (hereinafter "Troubled Loans").

900200.00001/21338761v1

17. A number of the Troubled Loans and/or the Defective Loans have been the source of litigation or claims or defenses, brought by borrowers, against Plaintiffs resulting in past and ongoing litigation expenses and settlement costs. As a result of these suits, Plaintiffs have expended sums in excess of $75,000, and have paid sums in excess of $75,000, for settlements and litigation expenses. As a matter of contract and based on the theories of recovery set forth in this Complaint, Defendants are liable to indemnify and to reimburse Plaintiffs for all such amounts.

18. Under the terms of the Agreements (including the Correspondent Manual), and at law, in addition to other remedies available to Plaintiffs, Defendants are obligated to repurchase the Troubled Loans from Plaintiffs, and to indemnify and hold harmless Plaintiffs from losses, including loss of servicing rights, damages, deficiencies, claims or expenses (including reasonable attorney's fees) resulting from the Defective Loans and/or the Troubled Loans where such is the result of, *inter alia,*

(a) any circumstance that would require repurchase, including early payment defaults, fraudulent documents, other borrower defaults, certain litigation, fraud in the loan, and cancellation or denial of insurance or guarantees;

(b) any misrepresentation or fraud;

(c) any breach of warranty or failure to fulfill the Agreement or the Correspondent Agreement;

(d) certain lawsuits; and

(e) any defect in a loan, or error or omission, caused by Defendants' actions.

(Correspondent Manual, IX.B.).

The obligation to indemnify is independent of any duty to repurchase.

6

19. Plaintiffs have suffered significant losses and damages from and as a result of its purchase from Defendants of the Defective Loans and the Troubled Loans. Its losses include losses due to borrower defaults, deterioration of security position, decreased value of the loans, lost or cancelled insurance or guarantees, repurchase demands from investors, and litigation settlements and costs. Plaintiffs' losses greatly exceed $75,000. These losses have occurred at various times throughout the period July 1999 to the present, including the various dates as to which a loan went into default, was written off, was determined to not qualify for FHA insurance, or otherwise was discovered to be a Defective Loan or a Troubled Loan. Some of the losses have yet to be discovered by Plaintiffs.

20. Plaintiffs have also suffered significant losses and damages as a result of their purchase from Defendants of the Defective Loans and the Troubled Loans, as of August 2004, Plaintiffs have had to charge off 74 AFN loans for a total loss amount in excess of $400,000.

21. In 2001 and 2002, Plaintiff GMAC Mortgage repeatedly put Defendants on notice of their duty to indemnify Plaintiffs in connection with certain of the Defective Loans and the Troubled Loans, and to repurchase certain of the Defective Loans and the Troubled Loans. These notices were by letters or e-mails dated June 20, 2001, September 12, 2001, October 12, 2001, October 23, 2001, October 25, 2001, September 17, 2002 and November 7, 2002, among other dates, and orally between Plaintiffs and Defendants, and between counsel for each. The total amount due to Plaintiffs on account of Defendants' obligations to repurchase and indemnify Plaintiff greatly exceed $75,000; for example, the demanded repurchase that was the subject of Plaintiff's October 23, 2001 notice letter totaled $389,280.38. To date, Defendants have not lived up to their indemnity obligations to Plaintiffs and have not repurchased any of the Defective Loans or the Troubled Loans.

7

22. Plaintiffs are excused from any further repurchase demand or other demand requirements, if any, due to the fact such demands would be an empty exercise under the circumstances.

23. The Agreements provide for attorney's fees and costs to be awarded to the prevailing party bringing an action for breach or other non-performance of obligations under the Agreements.

## COUNT I
### (Breach of Express and Implied Contract)

24. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 23 above as if herein fully restated.

25. AFN has breached the Agreements with Plaintiffs, as alleged above.

26. Plaintiffs have fully performed all of their obligations under the Agreements.

27. AFN's breach of the Agreements has harmed Plaintiffs, and they have suffered damages as prayed for herein.

## COUNT II
### (Implied Covenant of Good Faith and Fair Dealing)

28. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 27 above as if herein fully restated.

29. AFN has breached the covenant of good faith and fair dealing implied in the Agreements.

## COUNT III
### (Fraudulent Misrepresentation)

30. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 29 above as if herein fully restated.

31. Defendants made fraudulent misrepresentations and omissions with the intent that Plaintiffs rely thereon and (a) purchase the Defective Loans, (b) purchase the Troubled Loans, and (c) produce other loans.

32. Defendants also provided assurances and promises to Plaintiffs that the loans were not defective, troubled or in breach of the Agreements and that any loans that were would be repurchased or Plaintiffs otherwise would be held harmless from any losses. These representations were made with the intent that Plaintiffs rely thereon and forbear from enforcing their rights and/or from terminating the Agreements

33. Acting reasonably in reliance on Defendants' material misrepresentations and omissions as alleged, Plaintiffs purchased the Defective Loans and the Troubled Loans and forbore from enforcing their rights under the Agreements.

34. Defendants' misrepresentations as alleged above have harmed Plaintiffs, and they have suffered damages as prayed for herein.

## COUNT IV
### (Specific Performance)

35. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 34 above as if herein fully restated.

36. Plaintiffs have performed all of their obligations pursuant to the Agreements in good faith.

37. The Agreement provides that AFN will repurchase the Defective Loans and the Troubled Loans, and that AFN will indemnify and hold Plaintiffs harmless against any losses related to the Defective Loans and the Troubled Loans, as prayed above.

38. AFN has failed and refused to indemnify Plaintiffs, or to repurchase any of the Defective Loans or the Troubled Loans.

39. Plaintiffs have no adequate remedy at law and thus asks the Court to enter an equitable order of specific performance directing AFN to repurchase the Defective Loans and the Troubled Loans and indemnify Plaintiffs from and against all litigation expenses, settlement costs, and attorneys' fees arising in connection with the Defective Loans or the Troubled Loans.

## COUNT V
### (Indemnity)

40. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39 above as if herein fully restated.

41. By virtue of the relationship between Defendants and Plaintiffs, and because Defendants are solely responsible for the losses and potential losses of Plaintiffs, Defendants are liable to indemnify Plaintiffs from and against all losses and potential losses suffered or to be suffered by Plaintiffs.

## COUNT VI
### (Misrepresentation and Non-Disclosure – Defendant Kazinetz)

42. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 41 above as if herein fully restated.

43. Defendant Kazinetz supervised and participated in the underwriting and sale of some or all of the Defective Loans or the Troubled Loans to Plaintiffs. Defendant Kazinetz, by his words and conduct, represented that the Defective Loans were legitimate, met the warranties and representations in the Agreement, and were saleable and properly covered by FHA insurance. Defendant Kazinetz did this by (1) personally underwriting certain of the loans, signing off on the documentation, the underwriting and the representations, knowing Plaintiffs

would rely on his conduct; (2) failing to inform Plaintiffs that the loans were based upon applications or other documents that contained false and misleading information, or otherwise did not meet the requirements imposed by Plaintiffs, (3) failing to inform GMAC Mortgage that Defendant AFN had not complied with the Quality Control Program or other requirements of the loan programs and the Agreements, (4) providing a variety of oral and written assurances to Plaintiffs, when they expressed concerns about the Troubled Loans and the Defective Loans, that the loans were not fraudulent, that losses would be paid and that the concerns would be addressed satisfactorily, and (5) making the other representations and omissions as alleged. Its reliance on Kazinetz was reasonable, but these representations, omissions and assurances were untrue.

44. Defendant Kazinetz knew, or should have known, that his representations and omissions were false. To the extent Defendant Kazinetz did not have actual knowledge of the misrepresentations and omissions contained in the Defective Loans and the Troubled Loans or the misrepresentations as to the Defendants' establishment of, and compliance with, a Quality Control Program, he would have discovered that his representations were false had he made a reasonable investigation into the accuracy of the documentation underlying the Defective Loans and the Troubled Loans and the Defendants' establishment of, and compliance with, a Quality Control Program.

45. Defendant Kazinetz's representations were made with the intent to induce Plaintiffs to purchase the Defective Loans and the Troubled Loans, or to purchase other loans, or to forbear from enforcing its rights or terminating the Agreements.

46. Acting in reliance on Defendant Kazinetz's misrepresentations, misleading assurances, and misleading omissions, Plaintiffs purchased the Defective Loans and the Troubled

11

54. Defendant Kazinetz's misleading representations, assurances and omissions, as alleged herein, were intended to, and did, harm the existing Agreements between Plaintiffs and AFN.

55. Defendant Kazinetz had no privilege or justification to interfere with Plaintiffs' Agreements with AFN.

56. Defendant Kazinetz personally benefited from his intentional interference with the Agreements between Plaintiffs and AFN.

57. Plaintiffs have been harmed by Defendant Kazinetz's intentional interference with the Agreements between Plaintiffs and AFN, and have suffered damages as prayed for herein.

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues triable to a jury.

WHEREFORE, Plaintiffs pray for a judgment as follows:

(a)   that the Court award specific performance to Plaintiffs and order Defendants to repurchase the Defective Loans and the Troubled Loans and to indemnify Plaintiffs for all losses alleged;

(b)   that the Court award Plaintiffs damages against Defendants, including, but not limited to, actual, consequential, compensatory, and punitive damages in an amount to be determined at trial, but in excess of $75,000;

(c)   that the Court award Plaintiffs restitution from Defendants, and enter an order requiring Defendants to disgorge all profits, benefits and other compensation obtained or earned by Defendants, or as a result of their wrongful conduct alleged herein;

(d)   that the Court award Plaintiffs its attorneys' fees and costs;

(e)   that the Court award Plaintiffs interest; and

(f)     that the Court order such other and further relief as the Court deems just and proper.

> GMAC MORTGAGE CORPORATION,
> and GMAC BANK
>
> By their attorneys,
>
> /s/ Michael K. Sullivan
>
> Michael K. Sullivan
> BLANK ROME LLP
> One Logan Square
> Philadelphia, PA 19103-6998
> Tel: (215) 569-5500
> Fax: (215) 569-5555

Date:   December 7, 2004

14